Vincent **BOVINAS**, a/k/a Winzas Pestinikas, Plaintiff,

v.

Joseph **SAVORETTI**, District Director, Immigration and Naturalization Service; Thomas G. Finucane, Chairman Board of Immigration Appeals; and Herbert A. Brownell, Attorney General of the United States, Defendants.

Civ. No. 6000.

United States District Court
S. D. Florida, Miami Division.

Nov. 28, 1956.

Louis Glick, Miami, Fla., for plaintiff.

James L. Guilmartin, U. S. Atty., Miami, Fla., for defendants.

WHITEHURST, District Judge.

This cause is before the Court on petition seeking a declaratory decree vacating an Order of Deportation dated December 3, 1954, discharging petitioner from conditional parole, and restraining defendants from proceeding further under a Deportation Order dated July 16, 1954.

Petitioner, Vincent Bovinas (or Winzas Pestinikas) is a native and citizen of Lithuania who entered and was admitted to permanent residence in the United States in 1911, and who has resided here continuously since that time. Petitioner has a wife, also a resident alien, who is dependent upon him for support, and a grown daughter. Petitioner is employed as a house painter and disclaims any criminal record.

The deportation orders in question are based on findings that petitioner was a member of or affiliated with the Commu-

nist Party between 1921–1922 and 1932–1934 within the purview of Section 241 (a) of the Immigration and Nationality Act, 66 Stat. 204, 8 U.S.C.A. § 1251.

The relevant proceedings culminating in the subject deportation orders consisted of an informal hearing before an investigating officer on June 10, 1954, a formal hearing before a Special Inquiry Officer of the Immigration and Naturalization Service on June 24, 1954 (resulting in the July 16 deportation order) and an appeal therefrom to the Board of Immigration Appeals on September 23, 1954 (resulting in the December 3 deportation order). The evidence of record in this case on which the deportation orders are based is composed exclusively of the testimony of petitioner given orally or by affidavit on these occasions; no other witness or evidence of any sort was produced by either petitioner or the United States.

It is petitioner's contention that the evidence of record does not support a finding of membership in, or affiliation with, the Communist Party, as required by the Act, and also that petitioner was not accorded due process.

Throughout his testimony before the immigration authorities petitioner consistently maintained that his purpose in joining the various organizations of which he has been at one time or another a member was to receive insurance benefits and to associate with other Lithuanian-speaking people, and that he has never believed in or advocated revolution, nor even realized that any of the organizations of which he has been a member were dedicated to the overthrow of this Government by violence. Petitioner further testified that he was not an active member of the Communist Party. On the evidence of record, these points are not in dispute.

At the hearing on June 24, 1954, petitioner was questioned and replied, in part, as follows:

"Q. When did you first join the Communist Party? A. I can't remember the exact date, but I think it would be about '21 or '22."
* * *

"Q. Can you recall the name of the Communist Party at the time you first joined it? A. I think it was some kind of Workers Party or something like that.

"Q. Mr. Bovinas, from December 1921 to April 1923, there was an open party known as the Workers Party of America, and from April 1923 to 1929 there was a party known as The Workers Communist Party. A. I think when I joined it was the Workers Party of America." * * *

"Q. Mr. Bovinas, when you first joined the Workers Party of America, did you understand that to be a branch of the Communist Party? A. Well, I think I do understand that they called it Lithuanian communists or something like that, but there was a literary organization that was mixed up with it too."
* * *

On the basis of these and similar questions and answers promulgated at the previous hearing, the Special Inquiry Officer found that petitioner had been a member of the Communist Party from 1921 or 1922 to 1932 or 1934, and ordered his deportation.

On appeal to the Board of Immigration Appeals, petitioner supplemented his previous testimony with an affidavit, dated September 15, 1954, which stated, in part, as follows:

"3. When I was asked whether I had voluntarily joined the Communist Party in 1922, I was not aware of the significance of the question. As a matter of fact, I originally was a member of the Socialist Party, Lithuanian Branch, called the Lithuanian Socialist Federation in Philadelphia, Pennsylvania, in 1917. About 1922 or 1923 this entire branch was taken over by the Communist Party. I did not really at the time know the nature of the change. When I had originally join-

ed the Socialist Party in Philadelphia, it was not a revolutionary party. It did not advocate violence. I wanted merely to belong to a group of people who spoke the same language and had the same customs that I had.

"4. I have never advocated violence, nor do I believe in violence."

The Board of Immigration Appeals dismissed the appeal finding, in part:

"Respondent's own testimony in the hearing and his sworn statement belies the present protestations in oral argument and in the affidavit dated September 15, 1954 that the Socialist Party became the Communist Party without his knowledge."

The Board of Immigration Appeals was in error in finding that petitioner's affidavit asserted that the Socialist Party became the Communist Party without petitioner's knowledge, and in concluding therefrom that the affidavit was belied by petitioner's previous testimony. What petitioner's affidavit asserts is that when the Socialist Party was taken over by the Communist Party, he did not know the "nature" of the change, not that he was unaware of the fact of change; and this asserted ignorance of the nature of the change is neither contradicted nor impeached by petitioner's previous admissions. It remains, therefore, to determine whether or not the Board's error was prejudicial to petitioner.

An exhaustive analysis of the application and construction of the predecessor Act to the Immigration and Nationality Act of 1952 is set forth in Galvan v. Press, 1954, 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911. In that analysis the Supreme Court determined that a technichal membership in the Communist Party could yet be so nominal and innocent as to be no membership at all within the intent of Congress, and in exemplifying such a merely technical membership, the Court referred to the earlier case of Colyer v. Skeffington, D.C.D. Mass.1920, 265 F. 17.

The facts of the Colyer case are not greatly dissimilar from those of the instant proceeding. Thus, in the Colyer case, certain ignorant non-English-speaking aliens had joined the Socialist Party which had, in turn, been taken over by the Communist Party, the aliens thereby becoming members of the latter without knowledge or intentional support of its revolutionary purposes. The Supreme Court in Galvan v. Press held that Congress did not intend that such membership as exemplified by Colyer v. Skeffington should subject the aliens to deportation, stating, and quoting from the Colyer case, 347 U.S. at page 527, 74 S. Ct. at page 741:

"* * * the aliens passed 'from one organization into another, supposing the change to be a mere change of name, and that by assenting to membership in the new organization they had not really changed their affiliations or political or economic activities.'"

In the instant proceeding, petitioner testified before the hearing officer that he had joined the Communist Party in 1921–1922, but at the time of that testimony he was not represented by counsel and was apparently unaware of the grave consequences that might depend on whether his technical membership in the Communist Party was in fact real, or merely nominal and artificial. Subsequently, on appeal to the Board of Immigration Appeals, petitioner submitted an affidavit, uncontroverted in the record, the gravamen of which is that he did not voluntarily join the Communist Party in 1921 or 1922, but in fact joined the Socialist Party in 1917, and that the Socialist Party was thereafter picked up in 1922 or 1923 by the Communist Party, but that petitioner did not realize the nature of the change. In other words, the logical import of petitioner's affidavit is that petitioner's acquisition of membership in the Communist Party was in all material respects identical to that of the aliens in Colyer v. Skeffing-

ton in that he "passed 'from one organization into another, supposing the change to be a mere change of name.' "

It is clear from the above discussion that this affidavit of September 15, 1954, is a critical and perhaps determinative portion of petitioner's case. It is equally clear that the Board's misconstruction and resultant disregard of this affidavit means that petitioner's case was not considered on its merits, and that the orders of deportation are based on a presumed set of facts not supported by the record. This Court is, therefore, of the opinion that the findings of the Board of Immigration Appeals are not based on substantial evidence and that the deportation orders based thereon are wanting in due process.

A judgment will be entered discharging the petitioner from the warrant of deportation, vacating the deportation orders of July 16, 1954 and December 3, 1954, and releasing petitioner from conditional parole, but without prejudice to such further proceedings against petitioner as the Department of Justice may deem proper.